**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER ALLEN, | Case No. 1:11-cv-30 |
| Plaintiff, | Beckwith, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Christopher Allen filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In October 2007, Plaintiff filed applications for both Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI), alleging a disability onset date of August 30, 2007 due to both physical and mental impairments. After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). On January 12, 2010, an evidentiary hearing was held, at which Plaintiff was represented by counsel. (Tr. 29-73). At the hearing, ALJ Christopher McNeil heard testimony from Plaintiff, from Plaintiff's case manager, from medical expert Dr. Mary

Buban, and from vocational expert William Cody. On March 8, 2010, the ALJ denied Plaintiff's applications in a written decision. (Tr. 14-25).

The record on which the ALJ's decision was based reflects that Plaintiff was 24 years old at the time of his application, and a high school graduate. (Tr. 179). Plaintiff had past relevant work as a cashier, cook, telemarketer, security guard, military "raffleman," auto body repairman, and tire technician. (Tr. 174). Plaintiff last worked in July 2007, and lives in an apartment with a roommate. (Tr. 49). Plaintiff has minor children who do not live with him.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments, primarily relating to mental conditions: "bipolar disorder, posttraumatic stress disorder, and substance abuse." (Tr. 19). Although Plaintiff's counsel advocated in favor of a finding that Plaintiff met or equaled a listed impairment based upon his mental impairment(s), the ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court. (Tr. 21).

With respect to Plaintiff's claimed physical impairment, the ALJ assumed the validity of Plaintiff's diagnosis of lupus, but found that any impairment resulting from that diagnosis was not severe. Instead, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of work at any exertional level, with the following nonexertional limitations relating to his mental impairments:

> He can understand, remember, and carry out only simple routine, and repetitive tasks that do not require meeting production quotas; with not more than occasional changes in routine; and not more than occasional contact

with co-workers, supervisors, and the general public.

(Tr. 22). Based upon the record as a whole including testimony from the medical expert and vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "[t]he claimant is capable of performing his past relevant work in auto body repair and as a tire changer." (Tr. 24). Although the sequential analysis did not require the ALJ to do so, he specifically made alternative findings at Step 5 that Plaintiff also could perform "other jobs existing in the national economy." (*Id*.). Accordingly, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to DIB or to SSI. (Tr. 25).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by rejecting the opinions of Plaintiff's treating physician. Plaintiff further contends that the ALJ erred at Step 2 of the sequential analysis, by failing to find Plaintiff's lupus to be a "severe" impairment. As discussed below, the Court finds no error requiring reversal or remand.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform

his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

### B. Plaintiff's Two Claims of Error

### 1. Treating Physician

Plaintiff treated with a psychiatrist, Dr. Harrison, from October 2007 to November 2009, seeing him 12 times in that 2 year period, with visits approximately once every six weeks.[1] On January 5, 2009, Dr. Harrison completed a residual functional capacity form in which he opined that Plaintiff had a current GAF score of 35, with a score not higher than 48 over the prior year. (Tr. 357). Dr. Harrison advised that it was "not recommended that [Plaintiff] work at this time" due to his impairments. (Tr. 363). The controlling regulation, 20 C.F.R. § 404.1527(d)(2), provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added). Plaintiff complains that the ALJ erred in this case by rejecting the opinions of Dr. Harrison.

Consistent with his recommendation that Plaintiff should not work, Dr. Harrison rated Plaintiff as "seriously limited but not precluded" in five discrete work areas, including: maintaining regular attendance and being punctual; working in coordination with or

---

[1] As the ALJ noted, Plaintiff's records reflect that Plaintiff failed to appear for scheduled appointments on numerous occasions, and stopped taking his prescribed medications on at least three occasions in 2008. (Tr. 20).

proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychological symptoms, accepting instructions and responding appropriately to criticism from supervisors, and dealing with normal work stress. (Tr. 359). Dr. Harrison further opined that Plaintiff was "markedly limited" in maintaining social functioning and maintaining concentration, persistence or pace (Tr. 360). Overall, he concluded that Plaintiff's impairments would cause him to be absent from work about four days per month, although it is not clear whether that opinion was based upon the combination of Plaintiff's physical and mental impairments. (Tr. 361).

As a basis for rejecting Dr. Harrison's opinions that Plaintiff's limitations in social functioning and in maintaining concentration, persistence or pace were so "marked" as to preclude Plaintiff from all work, the ALJ explained that Dr. Harrison's assessment is not "supported by his treatment notes and is also inconsistent with the work-related limitations addressed elsewhere in that questionnaire." (Tr. 22). Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2). Likewise, the ultimate "determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). Thus, an ALJ may reject a treating physician's opinions on such issues, provided that he or she states "good reasons" for doing so, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).

The ALJ's explanation that Dr. Harrison's opinions were internally inconsistent and inconsistent with other portions or the record finds strong support upon review. Dr. Harrison never precluded Plaintiff from any activities. Despite his recommendation that Plaintiff not work, Dr. Harrison found that Plaintiff had only moderate limitations in his

activities of daily living and rated Plaintiff as "limited but satisfactory" in his abilities to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in unfamiliar places and use public transportation, as well as in the majority of "aptitudes needed to do unskilled work." (Tr. 23, 359-360). In four areas, including Plaintiff's abilities to remember work-like procedures, understand and carry out simple instructions, and ask questions when needed, Dr. Harrison rated Plaintiff's abilities as "unlimited or very good." (Tr. 359). Even with respect to the two areas in which Dr. Harrison found "marked" limitations, other areas of the same form reflect contradictory opinions that Plaintiff's abilities were "limited but satisfactory" to "[p]erform at a consistent pace" and to "[g]et along with co-workers or peers." (Tr. 359).

In contrast to Dr. Harrison who opined that Plaintiff had "marked" limitations in the areas of maintaining social functioning and in maintaining concentration, persistence or pace, two consultants opined that Plaintiff had only "moderate" limitations in the same two areas. (Tr. 244, 255, 260). On December 20, 2007, Dr. Melanie Bergsten reviewed Plaintiff's records and completed a mental RFC form. (Tr. 245-261). Dr. Bergsten noted that Plaintiff had received only sporadic treatment and that his daily activities included "watching his children." (Tr. 261). On May 22, 2008, state agency psychologist, Dr. Patricia Semmelman, affirmed that assessment. (Tr. 244). The ALJ adopted those opinions as well as the additional opinions expressed by Dr. Mary Buban, the clinical psychologist testifying as a medical expert ("ME") at the hearing, in formulating Plaintiff's mental RFC. (Tr. 21). Plaintiff argues that the ALJ erred in rejecting both Dr. Harrison's RFC opinions concerning Plaintiff's "marked" restrictions, and his recommendation that Plaintiff not work.

7

Contrary to the ALJ's analysis, Plaintiff contends that Dr. Harrison's opinions are in fact consistent with his treatment notes and the record as a whole, which reflects a lengthy history of mental illness and treatment. Although the record could support more than one interpretation in this case, I conclude that the ALJ's analysis and conclusions are supported by substantial evidence.

In addition to the internal inconsistencies in Dr. Harrison's report noted above, Dr. Harrison relied heavily on Plaintiff's subjective reports. As the ALJ states, Plaintiff's testimony concerning the degree of his mental impairments was often inconsistent with the objective medical record. For example, at the hearing Plaintiff asserted that he had been hospitalized for psychiatric issues four or five times, including two lengthy admissions lasting for 2 ½ weeks and a third admission for 1 ½ or 2 weeks. As the ALJ noted at the hearing, in completing the RFC form, Dr. Harrison indicated that Plaintiff had suffered from one or two episodes of decompensation within a 12-month period, each of "at least two weeks duration." (Tr. 61). However, Plaintiff's records "do not support the claimant's testimony" but instead showed that the longest admission, in 2006, was for four days, with fewer admissions than claimed for psychiatric symptoms, and most ER visits reflecting physical complaints. (Tr.22).

The ALJ pointed out additional inconsistencies between Plaintiff's statements to Dr. Harrison and Dr. Harrison's opinions. For example, Dr. Harrison stated in one treatment record dated January 7, 2009 that Plaintiff knew he had to return to court the following week and "spent the night gambling to make his child support payment," but wound up having his winnings stolen by a friend. (Tr. 23). The ALJ cited this as an example where Plaintiff's reported social activities appeared inconsistent with Dr. Harrison's view of

Plaintiff's social functioning as "markedly restricted," but consistent with the "moderate" restrictions found by other medical sources. And, although Plaintiff told Dr. Harrison in September 2009 that he had stopped using marijuana, on multiple other occasions, Plaintiff had been "less than candid about his substance abuse." (Tr. 23).

The ALJ also determined that the times "when the claimant has decompensated emotionally coincide with periods when he has gone off his medication and was abusing marijuana," (Tr. 23), a finding that Plaintiff does not dispute. (*See also* Tr. 40, admitting that Plaintiff voluntarily discontinued his medication). Substantial evidence supports this conclusion, to the extent that only after Plaintiff stopped taking his medications (from which he experienced no side effects), did Plaintiff express suicidal ideation. (Tr. 214, 288, 330, 367, 370, 381).

In addition to the inconsistencies noted, the ALJ explained additional reasons for formulating Plaintiff's mental RFC in a manner consistent with the opinions of the two state agency psychological consultants and testifying medical expert. Dr. Buban, the ME upon whose opinions the ALJ greatly relied, had the opportunity to not only review the complete record, but to observe and question Plaintiff at the hearing. (Tr. 23). In one of the records reviewed dating to November 2007, Plaintiff reported that he had friends and was caring for his two children during the day (Tr. 23, 261). Dr. Buban explained that if Plaintiff had the type of "marked" restrictions suggested by Dr. Harrison, she would have expected to see appointments with Dr. Harrison occurring more frequently than every six weeks. (Tr. 23). Instead, Dr. Harrison's own records reflect that Plaintiff frequently missed appointments and stopped taking his medications. (Tr. 214, 312-313, 322-323, 330, 333-334, 337).

Plaintiff concedes that "it seems clear that the Plaintiff has some ability to perform work-related activities" but protests that "[t]he real issue is that he cannot sustain these activities to satisfy the requirements of full time work." (Doc. 11 at 12). Yet, Dr. Buban testified that there was no evidence to support Dr. Harrison's opinion that Plaintiff would miss four days of work per month (Tr. 62), and Plaintiff points to nothing to support that opinion, either in Dr. Harrison's records or in other records. (Tr. 23). The ALJ incorporated into Plaintiff's RFC several mental restrictions consistent with "moderate" restrictions, including limiting Plaintiff to work with no more than occasional changes in routine, and no more than occasional contact with co-workers, supervisors, and the general public. (Tr. 22). Reviewing the record as a whole, I conclude that substantial evidence supports the ALJ's conclusions in this regard, including his rejection of the more severe work limitations offered by Plaintiff's treating physician.

### 2. Evaluation of Plaintiff's Lupus

As a second ground for relief, Plaintiff argues that the ALJ erred at Step 2 of the sequential analysis by failing to find that Plaintiff's lupus was a "severe" impairment. For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. See 42 U.S.C. §423(d)(1)(A); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)("an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience"). Based upon the lack of any records relating to Plaintiff's diagnosis and the paucity of records relating to treatment, the ALJ concluded that "[a]lthough the diagnosis [of lupus] is not necessarily questioned, the available medical evidence suggests it is mild." (Tr. 21).

Errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); 20 C.F.R. §404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone . . . ." 20 C.F.R. § 404.1545(e).

In this case, the ALJ determined that other impairments were "severe" and therefore proceeded through the entire five-step sequential analysis. Nevertheless, Plaintiff argues that the ALJ's conclusion that his lupus did not constitute a "severe" impairment requires remand, citing evidence that his lupus caused weight loss and other physical symptoms including fatigue that were "more than minimal."

As the ALJ pointed out, there is little objective evidence to support or corroborate Plaintiff's claimed diagnosis of lupus. At the hearing, Plaintiff's attorney stated that additional medical records existed, but none were ever submitted even though the ALJ held the record open for additional time. (Tr. 33-34). During a psychiatric admission in May of 2009, Plaintiff informed his attending physicians that he had been diagnosed with lupus three months prior, while in St. Louis, Missouri, and his examination did reveal a erythematous rash. (Tr. 21, 384). However, there are no records reflecting whether any

11

ANA studies were done, whether the diagnosis was by a rheumatologist or some other specialist, or why Plaintiff would have been diagnosed in St. Louis, Missouri. (Tr. 21).

Plaintiff generally asserts that he was diagnosed with lupus in early 2009.[2] In July 2009, he sought a refill of Vicodin for what he alleged to be lupus-related joint pain, and the attending physician noted a maculopapular rash. At the same time, the physician pointed out that he saw no diagnosis of lupus in the Plaintiff's extensive medical records. (Tr. 42). In terms of symptoms, emergency room records from July and September of 2009 reflect that Plaintiff presented with complaints of joint pain, skin rash, and fatigue, which he attributed to a recent diagnosis of lupus. (Tr. 410-411, 420-421). Plaintiff also testified that when he has lupus flare-ups, he sleeps about 12 hours per day. (Tr. 56).

Dr. Harrison apparently viewed Plaintiff's reported lupus as credible and significant, to the extent that his recommendation that Plaintiff not work appears to have been based in part on Plaintiff's lupus (313, 362). However, Dr. Buban testified as a medical expert that although lupus can cause psychological/psychiatric sequelae, there were simply no records in evidence from which she could evaluate whether or the extent to which lupus affects Plaintiff's psychological condition or work abilities (Tr. 41).

Even if the ALJ might have considered lupus to be a "severe" impairment at Step 2, I find no error requiring reversal or remand in this case because Plaintiff has failed to show any work-related limitations resulting from his diagnosis. One of the most dramatic symptoms Plaintiff alleges is weight loss. He reported to Dr. Harrison that he had lost approximately 90 pounds as a result of his lupus, (Tr. 313), and testified similarly at the

---

[2] The record contains varying evidence as to the date of Plaintiff's asserted diagnosis. For example, at the hearing he testified that he was diagnosed nearly a year earlier, in March or April of 2008. (Tr. 42).

12

evidentiary hearing that he had lost nearly 100 pounds due to lupus (Tr. 41). However, in August 2007 Plaintiff reported that he had lost 20 pounds because he was a "health nut" and did "a lot of exercises." (Tr. 370). Thus, the evidence as to the cause of Plaintiff's weight loss is not entirely consistent. More importantly, Plaintiff has never explained or offered evidence as to what work-related limitations, if any, result from his weight loss.

Similarly, Plaintiff has failed to demonstrate that his lupus causes any other work-related limitations. Plaintiff testified that lupus causes him to have fatigue, prolonged sleep periods, and loss of appetite, but again, none of these have ever been translated into work limitations by any medical source.[3] In addition, the ALJ found Plaintiff to be not credible in his testimony concerning the "intensity, persistence and limiting effects" of his symptoms. (Tr. 22). While the record reflects sporadic complaints of skin rash and joint pain, other records show that Plaintiff maintained his full strength, had no neurological abnormalities, and could walk normally. (Tr. 21).

### III. Conclusion and Recommendation

No error is apparent in the ALJ's rejection of a portion of the treating physician's opinions, or in the ALJ's overall consideration of the mild effects of Plaintiff's lupus on his work abilities. The ALJ properly considered the record as a whole, including the medical and clinical evidence and Plaintiff's statements and testimony, in formulating Plaintiff's RFC. Plaintiff's RFC does not preclude some of his previous work, and would permit Plaintiff to perform a significant number of additional jobs in the national economy. In sum, the ALJ committed no reversible error, and his finding of non-disability is well-supported by

---

[3] Dr. Harrison's opinion implies that Plaintiff's lupus causes limitations, but fails to explain what those specific limitations might be. To the extent that Dr. Harrison generally recommends that Plaintiff not work due to lupus, I have already concluded that the ALJ properly rejected that opinion.

substantial evidence in the record presented.

Therefore, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

      */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER ALLEN, | Case No. 1:11-cv-30 |
| Plaintiff, | Beckwith, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).